UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

ANGELA RAMSAY,

                                        Plaintiff,

            v.                                              7:12-CV-506
                                                            (LEK/ATB)

CAROLYN W. COLVIN,
COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.

_____

PETER L. WALTON, ESQ., for Plaintiff
VERNON NORWOOD, ESQ., Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## REPORT RECOMMENDATION

This matter was referred to me for report and recommendation by the Honorable

Lawrence E. Kahn, United States District Judge, pursuant to 28 U.S.C. § 636(b) and

Local Rule 72.3(d). This case has proceeded in accordance with General Order 18.

## I.    PROCEDURAL HISTORY

On November 17, 2009, Angela Rose Ramsay ("plaintiff") protectively filed [1]

for Disability Insurance Benefits ("DIB"), alleging disability with an onset date of

March 1, 2005. (Administrative Transcript ("T") 129). Plaintiff alleges disability

stemming from: migraine headaches, neck pain from cervical spine degenerative disc

---

[1] Protective filing indicates a written statement has been filed with the Social Security Administration indicating the claimant's intent to file a claim for benefits. *See* C.F.R. § 416.340. There are various requirements for this written statement. *Id.* If a proper statement is filed, the Social Security Administration will use the date of the written statement as the filing date of the application even if the formal application is not filed until a future date. *Id.*

disease, back pain from lumbar spine degenerative disc disease, hand pain from carpal tunnel syndrome, and foot pain from plantar fasciitis and heel spurs. (T. 134). Plaintiff was last insured on September 30, 2010. (T. 130). Plaintiff's claims were initially denied on March 3, 2010. (T. 66). Plaintiff filed a written request for a hearing on April 21, 2010. (T. 74). Plaintiff appeared before an Administrative Law Judge ("ALJ") who denied plaintiff's claim in a decision dated June 14, 2011. (T. 94, 14–24). The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on January 27, 2012. (T. 1–3).

## II. APPLICABLE LAW

### A. Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . ." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work.

2

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. §§ 404.1520 and 416.920 to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If [she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits [her] physical or mental ability to basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider [her] disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [she] has the residual functional capacity to perform [her] past work. Finally, if the claimant is unable to perform [her] past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920. The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes her impairment prevents her from performing her past work, the burden then shifts to the Commissioner to prove the final step. *Id*.

**B.    Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards

were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986. In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 197 U.S. 229 (1938)); *Williams*, 859 F.2d at 258.

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258. However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision. (*Id.*; *see also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982)).

## III. FACTS

Plaintiff's counsel has reviewed the facts extensively in his memorandum of law. Defense counsel has incorporated plaintiff's summary of the case, with additional supporting facts. This court will adopt the facts as stated by both parties, with any exceptions noted in the following discussion.

## IV. THE ALJ'S DECISION

The ALJ found that plaintiff last met the insured status requirements of the Social Security Act on September 30, 2010. (T. 14). Plaintiff did not engage in substantial gainful activity during the period from her alleged onset date of March 1, 2005, through her date last insured. (T. 16). The ALJ determined plaintiff suffered from two severe impairments: minimal to mild degenerative disc disease of the cervical and lumbar spine, and mild bilateral carpal tunnel syndrome. (*Id.*). The ALJ found insufficient medical documentation existed within the medical records to establish that plaintiff's migraine headaches, asthma, plantar fasciitis, systemic lupus erythematosus ("SLE"), rheumatoid arthritis ("RA"), and multiple sclerosis qualified as severe impairments. (T. 17–18).

After consideration of the entire medical record, the ALJ determined plaintiff had the residual functional capacity ("RFC") to perform "slightly less than the full range of light work." (T. 19). The ALJ found plaintiff was able to lift or carry twenty pounds occasionally, ten pounds frequently, and could walk or stand for six hours out of an eight hour work day. (*Id.*). However, plaintiff was limited in the "frequent use of her hands for fine manipulation such as fingering and feeling." (*Id.*).

Although the ALJ acknowledged that plaintiff's physical impairments caused her pain, she found plaintiff's statements regarding the intensity, persistence, and the limiting effects of those symptoms were not credible to the extent that they were inconsistent with an ability to do light work. The ALJ accorded great weight to the opinion of consultative examiner, Roberto Rivera, M.D., due to his programmatic expertise and overall consistency with other medical records. (T. 22). The ALJ accorded very little weight to the opinion of family practitioner, Charles Moehs, M.D., who performed a one-time independent medical examination. (T. 624–35). The ALJ found his medical statements were inconsistent with the totality of medical evidence found in the record and predicated on a possible diagnosis of SLE which was later ruled out. (T. 718, 724).

The ALJ found plaintiff was unable to return to her previous employment as a day care provider. (T. 22). The ALJ determined plaintiff had the RFC to perform slightly less than the full range of light work. Therefore, the ALJ used the Medical-Vocational Guideline § 202.21 which supported a finding of "not disabled," and concluded that jobs which plaintiff could perform existed in significant numbers in the national economy. (*Id.*). However, the ALJ found plaintiff's additional claimed limitations had little or no effect on the occupational base of unskilled light work, and that her manipulative limitations also did not significantly erode the unskilled light occupational base. (*Id.*).

## V. PLAINTIFF'S CONTENTIONS

Plaintiff makes three arguments in support of reversal of the Commissioner's determination:

(1) The ALJ erred when she found plaintiff's migraine headaches and plantar fasciitis/heel spur syndrome were not severe impairments. (Pl.'s Br. at 2).

(2) The ALJ failed to properly weigh the medical evidence. (Pl.'s Br. at 2).

(3) The ALJ failed to properly assess plaintiff's RFC. (Pl.'s Br. at 2).

Defendant argues substantial evidence supports the ALJ's determination. For the following reasons, this court agrees with defendant, and will recommend dismissal of the complaint.

## VI. DISCUSSION

Plaintiff argues the ALJ erred in finding that plaintiff's migraine headaches and plantar fasciitis/heel spur syndrome were not severe impairments. However, substantial evidence supports the ALJ's determination.

### A. Severe Impairment

#### 1. Legal Standards

The claimant bears the burden of presenting evidence establishing severity at Step 2 of the disability analysis. *Briggs v. Astrue*, No. 09–CV–1422 (FJS/VEB), 2011 WL 2669476, at *3 (N.D.N.Y. Mar. 4, 2011) (Report-Recommendation), *adopted*, 2011 WL 2669463 (N.D.N.Y. July 7, 2011). A severe impairment is one that significantly limits the plaintiff's physical and/or mental ability to do basic work activities. *See* 20 C.F.R. § 404.1520(c); *see also* 20 C.F.R. § 404.1521(a) (noting an

impairment is not severe at Step 2 if it does not significantly limit a claimant's ability to do basic work activities). The regulations define "basic work activities" as the "abilities and aptitudes necessary to do most jobs," examples of which include: (1) physical functions such as walking, standing, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting. 20 C.F.R. § 404. 1521(b). "Severity" is determined by the limitations imposed by an impairment, and not merely by its diagnosis.

An ALJ should make a finding of " 'not severe' . . . if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.' " *Rosario v. Apfel*, No. 97–CV–5759, 1999 WL 294727, at *5 (E.D.N.Y. Mar. 19, 1999) (quoting Social Security Ruling ("SSR") 85-28, 1985 WL 56856, at *3). The Second Circuit has held the Step 2 analysis "may do no more than screen out *de minimis* claims." *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995). If the disability claim rises above a *de minimis* level, then the remaining analysis of the claim at Steps 3 through Step 5 must be undertaken. *Id.* at 1030.

Often, when there are multiple impairments, as in this case, and the ALJ finds some, but not all of them severe, an error in the severity analysis at Step 2 may be harmless because the ALJ continued with sequential analysis and did not deny the

claim based on the lack of a severe impairment alone. *Tryon v. Astrue*, No. 5:10-CV-537, 2012 WL 398952, at *3 (N.D.N.Y. Feb. 7, 2012) (citing *Kemp v. Commissioner of Soc. Sec.*, No. 7:10-CV-1244, 2011 WL 3876526, at *8 (N.D.N.Y. Aug. 11, 2011)). This is particularly true because the regulations provide that combined effects of all impairments must be considered, regardless of whether any impairment, if considered separately, would be of sufficient severity. 20 C.F.R. §§ 404.1523, 416.923; *Dixon*, 54 F.3d at 1031.

## 2. Application

The ALJ found plaintiff's degenerative disc disease of the cervical and lumbar spine, and bilateral carpal tunnel syndrome qualified as severe impairments. (T. 16). While the ALJ did not find plaintiff's migraine headaches and plantar fasciitis/heel spur syndrome to be severe impairments, the ALJ considered the limiting effects of *all* of plaintiff's physical impairments, even those which were not severe when determining plaintiff's RFC. (T. 18). Thus, even if the ALJ erred in determining that either one or both of these impairments was not severe, any error would have been harmless. In any event, the court finds that the ALJ's severity determination was supported by substantial evidence. Plaintiff failed to meet her burden of establishing that either of these conditions caused significant limitations to her ability to perform basic work-related activities prior to the date plaintiff was last insured, September 30, 2010.

### a. Migraines

The ALJ properly determined plaintiff's migraine headaches are not severe and

9

do not significantly limit her ability to perform work-related activities. While plaintiff asserts MRI scans completed on February 19, 2010, indicate a long history of migraines, objective medical evidence is inconsistent with the alleged severity of plaintiff's symptoms. (T. 526; *see also* T. 624).

First, plaintiff's migraine severity decreased after her prescription medication was changed. On April 14, 2009, when plaintiff complained of intense migraine headaches, increased pain, nausea, photophobia, phonophobia, and dizzy spells following the use of Pamelor, her prescription was changed to Cymbalta. (T. 231). After this change in prescription, plaintiff reported symptom relief and improvement in subsequent medical examinations. In a follow-up visit on May 20, 2009, plaintiff stated that since starting her prescription of Cymbalta, she had not had any "bad headaches. . . [and] [h]er generalized body pain [was] also much better. . ." (T. 229). On July 24, 2009, plaintiff stated "her symptoms had been well controlled on Cymbalta." (T. 228). In a February 8, 2010 examination with plaintiff's treating neurologist, Abdul Latif, M.D., plaintiff "denie[d] having any headaches since her last visit," nearly six months after the doctor prescribed Cymbalta. (T. 524). She denied any blurred vision, diplopia, dizziness, vertigo, dysarthria and dysphagia. (*Id.*). Plaintiff was given an additional prescription of Depakote after she reported her migraine condition "had gotten worse over the past few weeks" during November 11, 2010 medical examination. (T. 703). In her following January 10, 2011 medical examination, plaintiff stated she had no migraines since her last appointment, and again denied photophobia, phonophobia, nausea, vomiting, dizziness, vertigo, aphasia

or syncope.  (T. 705).

Second, plaintiff's self-reported daily activities indicate her migraine pain does not rise to a level of severity as to significantly restrict her ability to perform basic work activities.  During a December 9, 2010 medical evaluation, plaintiff stated that although she suffered from migraine headaches, she was still capable of: driving, walking around the house, walking down her driveway, grocery shopping with some assistance, dressing, showering, performing light house work, and cooking meals.  (T. 661; *see also* T. 519).  Furthermore, plaintiff testified migraines were her most disabling medical condition and that she had suffered from migraine headaches for "decades."  (T. 52).  Despite the alleged migraine pain however, plaintiff was able to maintain steady employment throughout much of that time.  (T. 184).

Finally, plaintiff's contemporaneous statements to her physicians are inconsistent with the alleged severity of her migraine pain.  During her April 2011 hearing, plaintiff stated she was generally migraine free for 21 days out of a month. (T. 43).  While it is unclear as to what time period plaintiff was describing, this statement is generally inconsistent with contemporaneous medical statements to physicians which indicated her migraines had substantially reduced since 2008.  (*See* T. 228, 229, 524, 705).  Furthermore, during a December 9, 2008 medical examination, plaintiff reported her headaches were "nearly completely done after having them for 15 years."  (T. 224).  Ultimately, no medical source found any significant limitation to plaintiff's ability to perform basic work-related activities due to her migraine headaches.  Objective medical evidence found throughout the record

contradicts plaintiff's alleged migraine frequency and pain. The ALJ properly determined that plaintiff's migraines were not "severe."

### b. Plantar Fasciitis/Heel Spurs

Plaintiff has failed to meet the burden to establish significant limitations on her ability to work due to plantar fasciitis/heel spurs before September 30, 2010. Plaintiff cites treatment records from Walter H. Majak, DPM from March 2011 through August 2011 as evidence of a severe impairment. (Pl's Br. 18). However, plaintiff was treated by Dr. Majak over six months after the date she was last insured; none of the records cited by plaintiff discuss the relevant period of insurance. (T. 726–745).

The only report of foot pain in plaintiff's medical records during the relevant time period is an April 26, 2010 neurological consultation performed by Charles Wasicek, M.D. (T. 629). Dr. Wasicek is a neurologist who never diagnosed plaintiff with any foot condition. However, Dr. Wasicek noted plaintiff "had done better in terms of plantar fasciitis she does not have any tenderness and has been using supports which have been helpful." (T. 632). Other medical records also suggest plaintiff's condition was well managed through her last insured date. Dr. Majak noted plaintiff had "improvement[s] with strapping" and while plaintiff did suffer from some pain during subsequent examinations, notes indicate plaintiff reported less overall pain. (T. 726).[2]

---

[2] By December 12, 2011, plaintiff's foot pain had increased and she began discussing surgical treatments with Dr. Majak. (T. 745). While plaintiff's severity of pain may have increased, the medical record supports plaintiff's condition was well managed throughout her time of insurance.

Treatment notes from other physicians also support the finding that plaintiff's plantar fasciitis/heel spur is not a severe impairment. During a January 2010 medical examination with Dr. Latif, plaintiff maintained comfortable range of motion, equal deep tendon reflexes, "good motion of the left hip and knee without irritability or any evidence of synovitis," an intact Achilles tendon, and normal color and temperature of her feet. (T. 707). While plaintiff did suffer from some soreness and discomfort on the left side of her body while walking, throughout her insured period plaintiff remained able to "ambulate without support . . . and [was] able to heel and toe walk but with discomfort on the left side." (*Id.*). Additionally, plaintiff has consistently been reported as having good posture, normal gait, and normal stance. (T. 228, 229, 524, 699).

A review of plaintiff's medical record reveals substantial evidence supporting the ALJ's determination that neither plaintiff's migraines nor plantar fasciitis were severe impairments.

### B. Medical Evidence / RFC

#### 1. Substantial Evidence

The law is clear that in supporting his decision with substantial evidence, the ALJ cannot pick and choose only the parts of the record that support his determination, without affording consideration to the evidence supporting plaintiff's claim. *Credle v. Astrue*, No. 10-CV-5624, 2012 WL 4174889, at *17, 2012 U.S. Dist. LEXIS 134126 (E.D.N.Y. Sept. 19, 2012) (citing *Stewart v. Astrue*, No. 10-CV-3032, 2012 WL314867, 2012 U.S. Dist. LEXIS 12098 (E.D.N.Y. Feb. 1, 2012)). The

Commissioner considers data provided by physicians, but draws his own conclusions as to whether the data supports a finding of disability. *Id.* (citing *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999)). To the extent that those reports are inconsistent, conflicts in the evidence are for the ALJ to resolve. *Netter v. Astrue*, 272 F. App'x 54, 56 (2d Cir. 2008) (quoting *Richardson v. Perales*, 402 U.S. 389, 399 (1971)). The ALJ need not reconcile every shred of evidence in support of his decision. *Barringer v. Commissioner of Soc. Sec.*, 358 F. Supp. 2d 67, 78–79 (N.D.N.Y. 2005) (citations omitted). The ultimate determination of whether a plaintiff is disabled or "unable to work" is reserved for the Commissioner. *Credle v. Astrue*, at *17 (citing 20 C.F.R. § 404.1527(d)).

## 2. Application

Plaintiff argues the ALJ's decision is not supported by substantial evidence because she failed to accord enough weight to the opinion of Dr. Moehs, and because she accorded too much weight to Dr. Rivera's medical findings. However, the ALJ painstakingly reviewed plaintiff's medical records in supporting her decision, focusing not only on the opinions from both Dr. Moehs and Dr. Rivera, but also on the opinions of Dr. Latif, Dr. Schiffitto, Dr. Agarwal, and Dr. Wasicek. The ALJ also systematically discussed all of plaintiff's physical and mental conditions, including conditions with which plaintiff was never diagnosed: plaintiff's migraines, Multiple Sclerosis, SLE, and plantar fasciitis. A review of the ALJ's decision and plaintiff's medical records reveal the ALJ carefully considered the longitudinal medical record, resulting in a decision supported by substantial evidence.

### a.  Dr. Moehs and Dr. Rivera

Dr. Moehs performed a one-time independent medical examination of plaintiff on December 9, 2010.  (T. 656–63).  Dr. Moehs found plaintiff was almost completely disabled, and recommended against any type of work.[3]  (T. 656–659).  Dr. Moehs' opinion was accorded limited weight by the ALJ because the medical opinion was "inconsistent with the longitudinal medical evidence in the record and because his report as a one-time examining physician appears to be at least partially based on the claimant's inaccurate information that [plaintiff had] SLE, which was ruled out."  (T. 22).  While Dr. Moehs recommended that plaintiff not engage in any type of employment, he noted that further "treatment at a medical center more familiar with [plaintiff's] type of problems" was needed.  (T. 662).  Dr. Moehs further suggested strict limitations on plaintiff's ability to work "until a diagnosis and treatment is fully clear."  (*Id.*).  Ultimately, Dr. Moehs's statements implied further medical testing had to be conducted before any conclusive medical opinion could be rendered.  Dr. Moehs's recommended activity levels were based plaintiff's self-reported diagnosis of SLE, which was eventually ruled out; thus his opinion was accorded no weight by the ALJ.[4]  (*See* T. 718).

---

[3] The ALJ is entitled to reject conclusions of disability made by other sources because it is the province of the Commissioner to make the determination of whether an individual is disabled.  20 C.F.R. §§ 404.1527(e), 416.27(e); *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999)).  This is true even if the individual stating his or her opinion of disability is a medical doctor.  (*Id.*; *See also Michel v. Astrue*, 297 F. App'x 74, 76 (2d Cir. 2008)).

[4] Dr. Surabhi Agarwal, M.D., plaintiff's rheumatologist, found insufficient evidence to diagnose plaintiff with SLE.  (T. 718).  Plaintiff was found to have no rash or synovitis upon examination with an "essentially normal cardiopulmonary and neurology exam."  (*Id.*).  While Dr. Agarwal did order further testing, ultimately no diagnosis of SLE was ever rendered.

Other medical evidence is also inconsistent with the extent of Dr. Moehs's restrictions. In a January 2010 consultative examination, Dr. Rivera noted plaintiff had no difficulty changing for the examination, nor did she need any assistance getting on and off the examination table. (T. 520). Dr. Rivera noted plaintiff's gait and stance were normal. (*Id.*). Dr. Latif regularly reported plaintiff was not in any discomfort, and had normal deep tendon reflexes. (T. 228–234). Dr. Latif also consistently observed plaintiff's normal gait and posture from July 2009 through June of 2010. (T. 228, 229, 231, 234, 524, 699, 701–02). Dr. Curtain found plaintiff walked with normal gait both on her heels and toes in September of 2006. (T. 244).

The ALJ accorded great weight to Dr. Rivera's medical opinion from a January 2010 examination of plaintiff. (T. 22). Dr. Rivera recommended no limitations to sitting, standing, or walking, and moderate limitations to lifting, carrying, pushing, and pulling. (T. 522). Substantial objective medical evidence supports Dr. Rivera's recommendations.

During the medical examination, Dr. Rivera noted plaintiff's cervical spine had full flexion, extension of 30 degrees, rotation to 50 degrees left and right, and lateral flexion to 30 degrees left and right. (T. 521). Plaintiff's lumbar spine only showed some limitation in flexion to 45 degrees. (*Id.*). While plaintiff complained of hip pain, she had 4/5 strength in bilateral lower extremities. (*Id.*). Plaintiff had no subluxations, contractures, or thickening. (*Id.*). Her joints were stable and non-tender with no redness, heat, swelling, or effusion. (*Id.*).

---

Plaintiff sought the medical opinions of two separate physicians, none of whom diagnosed plaintiff with SLE. (*See* T. 624, 635, 674, 718).

Treatment notes from other examiners also support Dr. Rivera's findings. Dr. Schifitto, M.D., a consulting neurologist, noted later that year in an August 17, 2010 examination that plaintiff was able to "rise[] from a chair with a fluid movement, walk[] with normal stride, [and] normal associative movements and turning." (T. 624). Dr Latif also found plaintiff consistently able to ambulate without support, and found plaintiff maintained good posture, normal gait, and normal stance from July of 2009 through June of 2010. (T. 228, 229, 524, 699, 707). Substantial evidence supports the ALJ according Dr. Rivera's opinion great weight.

## C.  Residual Functional Capacity

### 1.  General Legal Standard

#### a.  RFC

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R.§ 404.1545, 416.945. *See Martone v. Apfel,* 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen,* 737 F. Supp. 180, 183 (N.D.N.Y. 1990)). An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities. *Martone,* 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler,* 728 F. 2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen,* 737 F. Supp. at 183; *Sullivan v. Secretary of HHS,* 666 F. Supp. 456, 460 (W.D.N.Y. 1987)). RFC can only be established when there is substantial evidence of each physical requirement listed in the regulations. *Id.* The RFC assessment must also

include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *Trail v. Astrue,* 5:09-CV-1120, 2010 WL 3825629, at *6 (N.D.N.Y. Aug. 17, 2010) (citing Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *7).

### b. Function-by-Function Analysis

An RFC assessment must identify the plaintiff's functional limitations or restrictions on "a function-by-function basis." SSR 96-8p, 1996 WL 374184. These functions include the ability to: lift, stand, walk, push, and pull. *See* 20 C.F.R. § 404.1545; *see also* 20 C.F.R. § 416.945. Failure to perform a function-by-function analysis of plaintiff's limitations could lead to the incorrect use of an exertional category, and an incorrect finding that the plaintiff is not disabled. *See* SSR 96-8p, 1996 WL 374184.

An RFC which does not cite to the medical record, does not address medical evidence, and does not employ a function-by-function analysis, will be remanded for failure to provide substantial evidence. *See Hogan v. Astrue,* 491 F. Supp. 2d 347 (W.D.N.Y. 2007). Notably, an RFC is not "the *least* an individual can do despite his or her limitations or restrictions, but the *most*." SSR 96-8p, 1996 WL (emphasis added).

### c. Credibility

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us

to decide whether the determination is supported by substantial evidence.'" *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting *Gallardo v. Apfel*, No. 96 CIV 9435, 1999 WL 185253, at *5 (S.D.N.Y. March 25, 1999)). To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two-step analysis of pertinent evidence in the record. *See* 20 C.F.R. § 404.1529; *see also Foster v. Callahan*, No. 96-CV-1858, 1998 WL 106231, at *5 (N.D.N.Y. March 3, 1998).

First, the ALJ must determine, based upon the claimant's objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged. . . ." 20 C.F.R. § 404.1529(a). Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which it limits the claimant's capacity to work. *Id.* § 404.152(c).

When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatments received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. (*Id. at*

§ 404.1529(c)(3)).

### 4. Application

#### a. Function-by-Function Analysis

In making the RFC determination, the ALJ weighed the evidence in the medical record, taking into consideration the credibility of the plaintiff's testimony regarding physical limitations. (T. 19)  The ALJ found the plaintiff could perform "slightly less than the full range of light work." (*Id.* ).[5]  Plaintiff argues the failure to perform a full function-by-function analysis resulted in an RFC which is inconsistent with her limitations in standing, stooping, and lifting. (Pl. Br. at 26).

Plaintiff argues the ALJ failed to perform a full function-by-function analysis by failing to explicitly discuss plaintiff's capacity to push and pull.  However, while the ALJ may not have explicitly mentioned plaintiff's ability to push and pull, the ALJ still performed a full function-by-function analysis, discussing plaintiff's ability to perform all functions of light work. (T.22).  The ALJ considered plaintiff's medical records, opinions of treating and consultative physicians, and plaintiff's own testimony when assessing plaintiff's work capacity. (T. 19–22).  The ALJ further recognized light work included work that entailed sitting most of the time "with some pushing and pulling of arm or leg controls" when assessing plaintiff's work capacity. (T. 22).  The

---

[5] Light work involves, *inter alia,* "lifting no more than 20 pounds at a time with frequent lifting, or carrying, of objects weighing up to 10 pounds." 20 C.F.R. 404.1567(b).  Light work includes jobs which require "a good deal of walking or standing," but also includes jobs which involve "sitting most of the time with some pushing and pulling of arm and leg controls." (*Id.*).  A person who is capable of performing light work is also capable of performing sedentary work. (*Id.*).  Sedentary work involves sitting, but "a certain amount of walking and standing is often necessary in carrying out job duties." 20 C.F.R. § 404.1567(a).

ALJ noted the pushing and pulling functions required for light work, and after reviewing the record, determined plaintiff was capable of performing these functions. The ALJ's decision and specific recognition of the push and pull requirements of light work is sufficient.

No evidence is found in any medical records indicating limitations on plaintiff's ability to push or pull, and instead focus on her use of hands for fine manipulation. This limitation was considered by the ALJ. (T. 19). As such, the ALJ properly performed a full function-by-function analysis, and the decision is not subject to reversal.

### b.    Credibility

Plaintiff further alleges the ALJ's RFC is inconsistent with plaintiff's limitations concerning her inability to stand or walk more than two hours in an eight hour day. (Pl.'s Br. 23). However, a review of the medical records reveal inconsistencies between plaintiff's subjective complaints, and objective medical evidence.

Objective medical evidence does not support plaintiff's alleged degree and severity of pain. Dr. Rivera noted plaintiff had no difficulty changing for examinations, or getting on and off the examination table. (T. 520). Plaintiff's physicians consistently reported plaintiff as having normal gait, stance, and posture. (T. 228, 229, 231, 234, 520, 524, 699, 701–02). While plaintiff stated she had radiating sharp neck pain, plaintiff's regular physician, Dr. Latif, consistently reported that plaintiff did not appear in any discomfort. (*See* T. 228–234, 524). X-rays taken in January of 2002 revealed only "mild rotoscoliosis" and "some loss of the lumbar

lordosis." (T. 291). These x-rays were found to be "otherwise unremarkable." (T. 300.).

A 2008 MRI taken of plaintiff's lumbosacral spine revealed normal results. (T. 233). Despite these results, plaintiff underwent a spinal decompression procedure. (*Id.*). Dr. Latif noted that, while plaintiff did have "mild tenderness in cervical spine and lumbar areas," she had normal posture and did not appear in any discomfort. (T. 234).

Plaintiff's activities and contemporaneous treatment statements are also inconsistent with the alleged degree of disability. Plaintiff admitted to cooking, performing light cleaning, shopping, showering, dressing herself, and going out to dinner every two weeks. (T. 61–62, 519–520). Plaintiff testified she suffered from extreme pain while driving, yet also stated that she continued to drive occasionally, and even drove herself to the April 26, 2011 hearing. (T. 37–38). Plaintiff has consistently been reported as being well-dressed, and able to walk with good posture. (T. 535, 228, 231).

Plaintiff also provided inaccurate medical statements and diagnoses to different physicians during examinations to bolster her disability claim. For instance, plaintiff told A.N.P. Bonnie Servage that tests for SLE and RA were positive. (T. 674). Plaintiff also reported to her podiatrist, Walter Majak, D.P.M., she had tested positive for SLE. (T. 726). While plaintiff underwent testing for a possible SLE diagnosis, no evidence in the record support a conclusive diagnoses of SLE.

Plaintiff also has a history of visiting several specialists in order to obtain a

diagnosis she prefers. During medical examinations with Ms. Servage, plaintiff alleged Dr. Wasicek wanted plaintiff to be referred to a Rochester clinic to see a second neurologist; yet requested Ms. Servage make the referral for fear of upsetting Dr. Latif.[6] (T. 674). Plaintiff also suggested Ms. Servage re-draw lab results to perform further testing for SLE; Ms. Servage refused. (T. 456).

When Dr. Wasicek was unable to diagnose plaintiff with SLE, plaintiff requested a second opinion from a Cincinnati Clinic. (T. 631). Dr. Wasicek noted plaintiff preferred additional opinions. (*Id.*). Dr. Surabhi Agarwal, M.D. from the Cincinnati Clinic also could not diagnose plaintiff with SLE. (T. 718). Plaintiff also sought the opinion of two different specialists in regards to a possible diagnosis of multiple sclerosis. (T. 623–28). In regards to plaintiff's plantar fasciitis, plaintiff reported to physicians that she was scheduled to have both heels operated on, although no evidence in the record supported her claim throughout the date of plaintiff's insurance.[7] (T. 731).

Plaintiff also referenced her pending Social Security claim to physicians in the hopes of eliciting favorable medical diagnoses. Ms. Servage noted plaintiff stated she had contacted a lawyer concerning her Social Security claim who "only takes on cases that they know they can win" when requesting Ms. Servage fill out her disability

---

[6] Notably, plaintiff alleged that Dr. Wasicek wanted to refer plaintiff to a second neurologist in Rochester after Dr. Latif ruled out a diagnosis of SLE. However, plaintiff indicated that Dr. Wasick did not "want to upset Dr. Latif" thus was sending A.N.P. Bonnie L. Servage a letter requesting she make the referral. (T. 674). Ms. Servage noted she did not have such a letter. (*Id.*).

[7] As mentioned above, plaintiff eventually underwent a surgical procedure for her plantar fasciitis in December of 2011 after her date of last insurance. (T. 746).

papers.  (T. 668).  Overall plaintiff has been less than forthcoming to medical professionals concerning possible medical conditions.  (T. 59).

Finally, plaintiff argues recommendations from Dr. Moehs concerning the limitations to her capacity to stand and walk, support plaintiff's alleged severity of pain.  However, as discussed above, Dr. Moehs' medical statement was based largely on a possible diagnoses of SLE and his recommendations were predicated on further "treatment at a medical center more familiar with [plaintiff's] type of problems."  (T. 662).  The diagnosis of SLE was eventually ruled out by other practitioners.  (T. 624, 635, 718).  Finally, as discussed above, Dr. Moehs' medical assessment was inconsistent with other objective medical evidence found throughout plaintiff's records.

Based upon the medical records, plaintiff's own contemporaneous examination statements, and plaintiff's own testimony, substantial evidence supports the ALJ's determination of plaintiff's RFC and her credibility.

**WHEREFORE,** based on the findings above, it is

**RECOMMENDED,** that the decision of the Commissioner be **AFFIRMED** and the complaint **DISMISSED IN ITS ENTIRETY.**

Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89

(2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: April 22, 2013

Hon. Andrew T. Baxter
U.S. Magistrate Judge